J-S43022-17

2017 PA Super 392

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MALAYSHA RAYNE PENNIX | |
| Appellant | No. 1709 WDA 2016 |

Appeal from the Judgment of Sentence Dated October 6, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003128-2016

BEFORE: STABILE, J., SOLANO, J., and FITZGERALD, J.[*]

OPINION BY SOLANO, J.:                    **FILED DECEMBER 12, 2017**

Appellant, Mayasha Pennix, appeals from the judgment of sentence imposed after the trial court convicted her of possessing a weapon in a court facility and disorderly conduct.[1]  We reverse Appellant's convictions and vacate her judgment of sentence.

Appellant agrees with the trial court's recitation of the facts. Appellant's Brief at 7.  The trial court stated:

> Briefly, the evidence presented by the Commonwealth (through stipulation to the Sheriff's Report and Affidavit of Probable Cause) indicated that on October 28, 2015, [Appellant] attempted to enter the Family Court building on Ross Street, but was detained at the metal detector when a scan of her book bag revealed the presence of a knife and razor blades.  [Appellant] was asked to remove the items from her bag, but she had difficulty locating them and became argumentative with the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 913(a)(1)and 5503(a)(3).

deputy. [Appellant] continued to get more and more agitated, and was heard screaming "Fuck you I ain't got time for this," "Fuck you police" and "I don't got time for you fucking police." (Allegheny County Sheriff's Incident Report, 10/28/15, p. 1). She was subsequently instructed to leave the building, but she refused and continued to scream and be disruptive until she was escorted from the building by Sheriff's deputies.

Trial Court Opinion, 3/3/17, at 1-2.

Appellant adds that she "was not merely escorted from the building . . . [but] was in fact arrested, [and] charged with the two crimes referred to and taken into custody." Appellant's Brief at 7. Appellant appeared for a bench trial on October 6, 2016. The trial court rendered its verdicts the same day, and sentenced Appellant to six months of probation. Appellant filed a post-sentence motion on October 7, 2016. The trial court denied the motion on October 12, 2016. Appellant filed this timely appeal on November 10, 2016.

Appellant presents the following issues for our review:

1. Was the evidence presented at Appellant's trial insufficient to support her conviction for Possession of a Dangerous Weapon in a Court Facility, 18 Pa.C.S. § 913(a)(1), since the evidence did not establish (A) that the objects found in her backpack were "dangerous weapons" under Crimes Code § 913(f); (B) that she possessed those objects inside a "court facility," as that phrase is defined by § 913(f); (C) that either the signage required by Crimes Code § 913(d) was posted as required on the date of her arrest or that her actual knowledge obviated the need for such signage; and (D) that she realized that a knife and razor blades were inside her backpack on the date of her arrest?

2. Should this Court disregard the trial court's declaration, contained in its Pa.R.App.P. 1925 advisory opinion, that it took *sua sponte* judicial notice of the layout of the Allegheny

County Family Division Courthouse and of the signage on that building, given that (A) the trial court's failure to declare, during the course of Appellant's trial, that it was taking such notice means that it did not in fact take judicial notice at trial, and post-verdict judicial notice is not permitted; (B) taking judicial notice at trial would have been improper since the subject matter was not one for which judicial notice could be taken (the rule being that judicial notice cannot be based on a judge's personal knowledge and cannot be taken unless a matter is either known to the community as a whole or else is found in identified and unimpeachable sources); and (C) taking judicial notice would in any event have been improper since the failure to inform the parties that such notice was being taken precluded a response, and since the precise basis for the taking of judicial notice was never indicated?

3. Was the evidence presented at Appellant's trial inadequate to support her conviction for Disorderly Conduct via Obscene Utterances or Gestures, 18 Pa.C.S. § 5503(a)(3), given the absence of sufficient evidence establishing that she either uttered obscene words (as opposed to mere profane language) or made an obscene gesture?

Appellant's Brief at 3-5.

Appellant argues that her convictions should be vacated because the Commonwealth failed to present sufficient evidence to establish her guilt beyond a reasonable doubt under the applicable statutes. When reviewing a claim that the trial court erred in determining the evidence was sufficient to prove an offense, an appellate court must assess the evidence and all reasonable inferences from that evidence most favorably to the verdict winner. *Commonwealth v. Whitacre*, 878 A.2d 96, 99 (Pa. Super.), *appeal denied*, 892 A.2d 823 (Pa. 2005). As long as the evidence and inferences provide sufficient information to establish proof beyond a reasonable doubt, the evidence is sufficient. *Id.* Further, the

Commonwealth can meet its burden of reasonable doubt "by means of wholly circumstantial evidence." *Id.*

The statute making it a crime to possess a dangerous weapon in a court facility states:

A person commits an offense if he:

(1) knowingly possesses a firearm or other dangerous weapon in a court facility or knowingly causes a firearm or other dangerous weapon to be present in a court facility

18 Pa.C.S. § 913(a)(1). The statute defines a "dangerous weapon" as —

A bomb, any explosive or incendiary device or material when possessed with intent to use or to provide such material to commit any offense, graded as a misdemeanor of the third degree or higher, grenade, blackjack, sandbag, metal knuckles, dagger, knife (the blade of which is exposed in an automatic way by switch, push-button, spring mechanism or otherwise) or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

18 Pa.C.S. § 913(f) (emphasis added). The statute regarding disorderly conduct provides:

A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . .

(3) uses obscene language, or makes an obscene gesture;

18 Pa.C.S. § 5503(a)(3).

The trial court asserts that Appellant "has failed to present any meritorious issues on appeal," stating that it was "well within its discretion in finding that the knife and razor blades were 'dangerous weapons'" and that

Appellant "repeatedly used obscene language towards the Sheriff's Deputies . . . to support the conviction for disorderly conduct." Trial Court Opinion, 3/3/17, at 1, 4-5. However, the Commonwealth concedes there may be a basis to vacate Appellant's conviction for possession of a dangerous weapon in a courthouse because "the two inch folding knife and two individual razor blades . . . may not fit the definition of a dangerous weapon under § 913." Commonwealth Brief at 5. The Commonwealth also states that Appellant's conviction for disorderly conduct may be vacated because Section 5503(a)(3) of the Crimes Code requires proof that Appellant used obscene language or made obscene gestures, and, although Appellant used profanity, "recent case law indicates that [Appellant's profanities] do not fall under the realm of obscenities." *Id.*

Appellant argues that the "folding knife with a two inch blade" and two razor blades recovered from her book bag "do not constitute 'dangerous weapons' as defined by Crimes Code § 913(f)." Appellant's Brief at 8. She states:

> For a knife to be a § 913(f) dangerous weapon, it must either be a dagger, a knife whose blade is exposed via a switch or other automated method, or a knife that serves no common lawful purpose. Appellant's common ordinary folding knife was not such a knife and was not shown to be such a knife. For the razor blades to constitute § 913(f) dangerous weapons, they must lack a common lawful purpose, which was not shown.

*Id.* at 8-9.

At trial, Appellant testified that when she entered the courthouse on October 28, 2015, she possessed a book bag which she had not used "for some time." N.T., 10/6/16, at 4. She stated that there were many items already in the bag when she decided to use it to carry her court papers, and she did not realize the knife and razor blades were in the bag. *Id.* at 4-5. Appellant was surprised when the metal detector sounded, and admitted to becoming upset and expressing her frustration when she was directed to recover the items from the book bag, was not sure what they were, and could not locate them right away. *Id.* at 5. Appellant described the knife as "a pocketknife." *Id.* at 7.[2] There was no other testimony concerning the character of the knife or razor blades.

The trial court stated:

Although there was no testimony elicited regarding the knife itself, and specifically no mention of whether it was a type of automatic or spring release, the Sheriff's Incident Report and Affidavit of Probable Cause indicate that the knife was a folding knife with a two (2) inch blade. No further details were provided regarding the razor blades.

Trial Court Opinion, 3/3/17, at 5. In support of its holding that the knife and razor blades nevertheless qualified as dangerous weapons, the court cited an

---

[2] A "pocketknife" is "a knife that has one or more blades that fold into the handle and can be carried in the pocket." Merriam-Webster, *http://www. merriam-webster.com/dictionary/pocketknife* (accessed Nov. 14, 2017). This definition does not exclude pocketknives that fold manually.

unpublished memorandum from this Court,[3] which, under our Internal Operating Procedures, is not a citable authority. *See* 210 Pa. Code § 65.37(A); *Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 77 A.3d 1282, 1286 (Pa. Super. 2013), *affirmed*, 113 A.3d 1230 (Pa. 2015). We are aware of no precedential case law that addresses whether a pocketknife and razor blades like those carried by Appellant qualify as dangerous weapons.

The statute states that a knife is a dangerous weapon if it has a blade that "is exposed in an automatic way by switch, push-button, spring mechanism or otherwise." 18 Pa.C.S. § 913(f). There is no evidence in the record that Appellant's pocketknife opened with an automatic switch or other device. Nor is there any evidence that Appellant's pocketknife or razor blades qualified under Section 913(f)'s alternate definition of "implements for the infliction of serious bodily injury which serve[] no common lawful purpose"; while the absence of proof makes judicial notice unnecessary, we recognize the common knowledge that such implements often serve as utilitarian tools. In light of this record, we conclude that the Commonwealth failed to meet its burden of presenting sufficient evidence to establish that

---

[3] The trial court and both parties cited to *Commonwealth v. Hyatt*, No. 1259 WDA 2012, 2013 WL 11267522 (Pa. Super., Apr. 16, 2013), in which we affirmed the appellant's judgment of sentence based on the trial court's opinion. The trial court in *Hyatt* stated that it properly applied a deadly weapon enhancement to the appellant's sentence for a robbery committed while he used a hunting knife, even though the knife "does not seem to fall under the definition of a dangerous weapon" in the Crimes Code. *Hyatt*, at *5. The *Hyatt* decision is not on point.

Appellant entered the courthouse in possession of "dangerous weapons" in violation of Section 913, and we therefore reverse her conviction for that offense.

Similarly, the record does not support Appellant's conviction of disorderly conduct under Section 5503(a)(3) for the use of "obscene language" or the making of "an obscene gesture." Appellant admitted that she became "very upset" and was "using profanity with the police." N.T., 10/6/16, at 5. She testified it "wasn't my first response. I was trying to look for it actually, and the cop was like — the police was like, you know, I'm not going to look for it, you're going to get it. . . . I didn't know where it was . . . I was having a hard time finding it, that's what I'm trying to say." *Id.* at 6-7. There was no other testimony regarding whether Appellant acted with an "intent to cause public inconvenience, annoyance or alarm" or was "recklessly creating a risk thereof" — essential elements under the statute.

It is well-settled that "the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." *Commonwealth v. Mauz*, 122 A.3d 1039, 1041 (Pa. Super. 2015) (citations omitted). The Commonwealth has cited this Court's decision in *Commonwealth v. McCoy*, 69 A.3d 658, 665 (Pa. Super. 2013), in which we held that there was insufficient evidence to support a defendant's conviction of disorderly conduct when the defendant chanted

"fuck the police" during a funeral procession of a fallen police officer. We concluded that the defendant's words were not obscene under Section 5503(a)(3) because "there was no evidence that the chant was intended to appeal to anyone's prurient interest nor did it describe, in a patently offensive way, sexual conduct." *Id.* at 666.

Likewise, in *Commonwealth v. Kelly*, 758 A.2d 1284 (Pa. Super. 2000), we reversed an appellant's conviction of disorderly conduct under Section 5503(a)(3) for profanely responding "fuck you, asshole" to a street department employee and accompanying the response with the extension of his middle finger. We explained:

> The first inquiry is what is the definition of "obscene" for purposes of 18 Pa.C.S. § 5503(a)(3). This Court has held that, for purposes of a disorderly conduct statute prohibiting the use of obscene language, language is obscene if it meets the test set forth in *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973):

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

> *Commonwealth v. Bryner*, 438 Pa. Super. 473, 652 A.2d 909, 912 (1995). In *Bryner*, our Court held that the phrase "go to hell Betsy" was not obscene. Thus, we use the *Bryner* test to determine whether words and gestures are obscene for purposes of 18 Pa.C.S. § 5503(a)(3).

> Our next inquiry is whether the "F-word" and the gesture are obscene within the meaning of 18 Pa.C.S. § 5503(a)(3). . . .

Our Supreme Court addressed Section 5503(a)(1) (and not Section 5503(a)(3)) recently in **Commonwealth v. Hock**, 556 Pa. 409, 728 A.2d 943 (1999). There, a person directed a profane remark, "F- you, asshole," at a police officer. The Court concluded that the utterance was not sufficient to support a conviction of disorderly conduct under Section 5503(a)(1) because the utterance did not amount to "fighting words" under 18 Pa.C.S. § 5503(a)(1). The Court concluded that, under the facts of the case, Hock's comment did not risk an immediate breach of the peace. **Hock**, 728 A.2d at 946. . . .

While Justice Castille dissented in **Hock**, he commented that:

Appellant's words, while certainly obscene according to common parlance, do not fit the definition of "obscene" under Section 5503(a)(3) of the Disorderly Conduct Statute.... [L]anguage is obscene if it meets the test set forth in **Miller** ....

**Id.** at 947, n. 1.

**Kelly**, 758 A.2d at 1286–87.

Here, as in **Kelly**, there is insufficient evidence to support Appellant's disorderly conduct conviction where her words "were angry words . . . having nothing to do with sex." **Kelly**, 758 A.2d at 1288. Our conclusion in **Kelly** also applies here:

[W]hile the words and conduct used by Appellant were disrespectful, insulting and offensive, they were, in the circumstances of this case, not "obscene" within the meaning of Section 5503(a)(3). Further, the record fails to support a conclusion that Appellant's comment risked an immediate breech of the public peace.

**Id.** (citation omitted).

In sum, our review of the record reveals that the evidence was insufficient to support Appellant's convictions under the Crimes Code for

possessing a weapon in a court facility under Section 913 and disorderly conduct under Section 5503(a)(3). We therefore reverse the convictions. Our disposition makes it unnecessary to reach Appellant's other issues.

Judgment of sentence vacated. Appellant discharged. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2017