J-S44013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMUEL WILLIAMS, III | : | |
| | : | |
| Appellant | : | No. 2396 EDA 2017 |

Appeal from the Judgment of Sentence May 10, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0005843-2016

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 15, 2018**

Samuel Williams, III, appeals from the judgment of sentence, entered in the Court of Common Pleas of Delaware County, after he was convicted of three counts of disorderly conduct.[1]  After careful review, we affirm in part and vacate in part.

On August 25, 2016, Officer Andrew Maull of the SEPTA Transit Police Department was parked near a bus station logging hours in his patrol car when he heard yelling, screaming, and a bus operator honking his horn.  Officer Maull walked over and observed Williams screaming at the top of his lungs, "mother f---er, f---er" and "shut the f--- up, b----" at the bus driver, in view of a crowd of approximately twenty people.  N.T. Trial, 5/10/17, at 9.  Officer Maull made numerous requests for Williams to leave and requested his

---

[1] 18 Pa.C.S.A. §§ 5503 (a)(1)-(3).

identification, which Williams refused to provide. Williams insisted that "he would do what he wants until handcuffs are put on him." N.T. Trial, 5/10/17, at 10. The officer produced handcuffs and attempted to restrain Williams, who slapped the handcuffs away from his wrist. Officer Maull displayed his taser, which prompted Williams' companion to jump in front of Williams. By this time, a considerable crowd had formed and was becoming hostile, and Maull called to request backup, resulting in approximately twelve Upper Darby Police Officers arriving on the scene. Eventually, Maull managed to handcuff Williams and place him under arrest.

The Commonwealth charged Williams with four counts of disorderly conduct[2] and one count of resisting arrest.[3] After a preliminary hearing on September 12, 2016, the trial court dismissed the resisting arrest charge and the section 5503(a)(4) count of disorderly conduct. On May 10, 2017, the trial court amended Williams' third-degree misdemeanor counts of disorderly conduct to summary offenses.

A non-jury trial commenced that same day. Officer Maull and Williams were the sole witnesses. The court determined that Officer Maull was credible, and accepted his account of the incident, detailed above, as fact. Williams, however, offered dramatically different testimony. Williams claimed he never yelled or screamed during the entire incident, and that Officer Maull ran up to

---

[2] 18 Pa.C.S.A. §§ 5503 (a)(1)-(4).

[3] 18 Pa.C.S.A. § 5104.

- 2 -

him and "came straight to [his] face," demanding to see identification.  N.T. Trial, 5/10/17, at 30.  According to Williams, he threw his hands up as soon as Officer Maull pulled out his handcuffs.  Williams disputed even the smallest details of Officer Maull's testimony, including the gender of the bus operator.

The trial court convicted Williams of three counts of disorderly conduct and sentenced him to 30 days' incarceration for each count, running concurrently.  On May 18, 2017, Williams filed a motion for reconsideration of sentence, which was denied.  Williams timely appealed.  Both he and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Williams presents the following issues for review:

(1)     Whether the trial court properly concluded that the Commonwealth sufficiently proved [Williams] guilty of disorderly conduct beyond a reasonable doubt, based upon the complete lack of evidence that [Williams] intended to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:

    (a)     Engaged in fighting or threatening, or in violent or tumultuous behavior?

    (b)     Made unreasonable noise?

    (c)     Used obscene language, or made obscene gestures?

(2)     Whether the trial court properly denied [Williams'] request to draw a negative inference against the Commonwealth, based on the Commonwealth's failure to preserve materially exculpatory evidence.

Brief of Appellant, at 5.

Our standard of review regarding challenges to sufficiency of evidence is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Roberts***, 133 A.3d 759, 767 (Pa. Super. 2016).

Williams challenges each of his disorderly conduct convictions, 18 Pa.C.S.A. §§ 5503(a)(1), (2), and (3). Section 5503 provides in pertinent part:

(a) Offense defined. **-** A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise; [or]

(3) uses obscene language, or makes an obscene gesture[.]

18 Pa.C.S.A. § 5503(a)(1)-(3).

- 4 -

Disorderly conduct is determined by whether the defendant's conduct creates a "public unruliness which can or does lead to tumult and disorder." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999) (quoting *Commonwealth v. Greene*, 189 A.2d 141, 144 (Pa. 1963)). In particular, we consider the actor's tone of voice, capacity to alarm or frighten, and any surrounding bystanders. *See Hock*, *supra* (holding defendant's remark not disorderly conduct because he used normal tone of voice, did not frighten police officer, and there were no bystanders).

This Court has held that a violation of section 5503(a)(1) may occur where a person utters "fighting words." *See Commonwealth v. Reynolds*, 835 A.2d 720, 730-31 (Pa. Super. 2003) (holding defendant's fighting words supported conviction for disorderly conduct under section 5503(a)(1)). Fighting words are "[words] which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Commonwealth v. Mastrangelo*, 414 A.2d 54, 58 (Pa. 1980). When determining whether utterances amount to fighting words, we look to the circumstances surrounding the event in order to judge whether the words had a tendency to cause acts of violence. *See Hock*, 728 A.2d at 946.

"Unreasonable noise" in section 5503(a)(2) is "determined solely by the volume of the speech, not its content." *Commonwealth. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. 2005). We define unreasonable noise as noise which is "not fitting or proper in respect to the conventional standards of organized society or a legally constituted community." *Id.*

Williams' challenges to his disorderly conduct convictions under section 5503(a)(1) and (2) are without merit. The record reveals that Williams was "standing outside the bus door, berating the female operator, screaming . . . mother f---er." N.T. Trial, 5/10/17, at 8-9. These profanities were so abrasive that the bus operator felt the need to honk the horn to get the attention of law enforcement. Further, Williams did not stop causing the disturbance once confronted by Officer Maull; rather, the incident caused a hostile crowd to form, requiring Officer Maull to request backup. Viewing the evidence in the light most favorable to the Commonwealth, we conclude that this evidence is more than sufficient to allow a factfinder to adjudge Williams guilty beyond a reasonable doubt as to disorderly conduct under sections 5503(a)(1) and (2). **Hock**, **supra**.

There is, however, insufficient evidence to sustain Williams' conviction of disorderly conduct using obscene language, pursuant to section 5503(a)(3). With regard to section 5503(a)(3), we characterize language as obscene if it meets the three-part test set forth in **Miller v. California**, 413 U.S. 15, 24 (1973):

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*See Commonwealth v. Kelly*, 758 A.2d 1284, 1286 (Pa. Super. 2000); *see also Commonwealth v. Bryner*, 652 A.2d 909, 912 (Pa. Super. 1995) ("[W]e note that the *Miller* test has been adopted by our legislature in defining what constitutes obscene materials[.]").

Even when viewing the evidence in the light most favorable to the Commonwealth, Williams' remarks of "mother f---er" and "shut the f--- up b----," while abrasive, were not sexually explicit in nature. N.T. Trial, 5/10/17, at 9; *see Commonwealth v. Pennix*, 176 A.3d 340, 346 (Pa. Super. 2017) (holding appellant's remarks of "F--- you police . . . I don't got time for you f---ing police" were not sexually obscene under section 5503(a)(3)); *see also Kelly*, 758 A.2d at 1288 ("Appellant's use of the 'F-word' and use of the middle finger were angry words and an angry gesture having nothing to do with sex."). We accordingly vacate Williams' conviction of disorderly conduct under section 5503(a)(3).

Finally, Williams challenges the trial court's denial of his request to draw a negative inference against the Commonwealth, based on the Commonwealth's failure to preserve Officer Maull's allegedly materially exculpatory body camera footage.

We review a challenge to a trial court's ruling regarding alleged discovery violations under an abuse of discretion standard. *Commonwealth v. Robinson*, 834 A.2d 1160 (Pa. Super. 2003). With respect to a defendant's access to evidence, our Supreme Court has observed:

[T]he Due Process Clause of the Fourteenth Amendment requires defendants be provided access to certain kinds of evidence prior to trial, so they may be afforded a meaningful opportunity to present a complete defense. This guarantee of access to evidence requires the prosecution to turn over, if requested, any evidence which is exculpatory and material to guilt or punishment, and to turn over exculpatory evidence which might raise a reasonable doubt about a defendant's guilt, even if the defense fails to request it. If a defendant asserts a **Brady**[4] or **Agurs**[5] violation, he is not required to show bad faith.

There is another category of constitutionally guaranteed access to evidence, which involves evidence that is not materially exculpatory, but is potentially useful, that is destroyed by the state before the defense has an opportunity to examine it. When the state fails to preserve evidence that is "potentially useful," there is no federal due process violation unless a criminal defendant can show bad faith on the part of the police. Potentially useful evidence is that of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. **In evaluating a claim that the Commonwealth's failure to preserve evidence violated a criminal defendant's federal due process rights, a court must first determine whether the missing evidence is materially exculpatory or potentially useful**.

*Commonwealth v. Chamberlain*, 30 A.3d 381, 402 (Pa. 2011) (internal quotations and citations omitted) (emphasis added).

A **Brady** violation is established where the defendant demonstrates "(1) the evidence was suppressed by the Commonwealth, either willfully or

---

[4] **Brady v. Maryland**, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[5] **United States v. Agurs**, 427 U.S. 97, 112 (1976) (holding omitted evidence must be viewed in context of entire record, and if omitted evidence creates reasonable doubt that did not otherwise exist, constitutional error has been committed).

inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." ***Commonwealth v. Antidormi***, 84 A.3d 736, 747 (Pa. Super. 2014). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." ***Id.***

Instantly, there are only two witnesses who testified at trial – Officer Maull and Williams. Each witness offered drastically different accounts of the events that transpired. Williams' claim that the footage on the body camera video is materially exculpatory is nothing more than a mere possibility that it might have depicted events differently than the Commonwealth presented at trial; it is equally likely that the recording would have corroborated Officer Maull's testimony. ***See Commonwealth v. Spotti***, 94 A.3d 367, 383 (Pa. Super 2014) (holding mere possibility that body camera footage, which was routinely deleted after 30 days, "'might have' depicted events differently [did] not establish 'materiality'."). Thus, Williams has not established that the evidence was materially exculpatory, and the claim does to rise to the level of a ***Brady*** violation.

Therefore, the recording was merely "potentially useful"[6] evidence, which requires Williams to show that the Commonwealth acted in bad faith by

_____

[6] ***See Commonwealth v. Synder***, 963 A.2d 396, 408 (Pa. 2009), ***quoting Arizona v. Youngblood***, 488 U.S. 51, 57 (1988) (holding evidence is

failing to preserve it. ***Chamberlain***, ***supra***. Nothing in the record shows the Commonwealth acted in bad faith by failing to preserve the body camera footage. The district attorney noted at trial that SEPTA routinely deletes body camera footage after thirty days. ***See*** N.T. Trial 5/10/17, at 5 ("unless there's a specific request to preserve [the footage], they usually don't keep them for longer than 30 days."). Williams was arrested on August 25, 2016, and filed a motion for compulsory disclosure on March 27, 2017. This is long after the thirty-day body camera preservation period; therefore, there was no way for the Commonwealth to provide the footage. Accordingly, the record shows no evidence of bad faith. Thus, we conclude that the trial court did not abuse its discretion in denying Williams' request to draw a negative inference against the Commonwealth regarding its failure to preserve the body camera footage. ***Robinson***, ***supra***.

Judgment of sentence for disorderly conduct under sections 5503(a)(1) and (a)(2) affirmed. Judgment of sentence for disorderly conduct under section 5503(a)(3) vacated. Jurisdiction relinquished.[7]

_____

potentially useful where "no more could be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.").

[7] Due to the fact that Williams' sentences run concurrently, vacating his section 5503(a)(3) count of disorderly conduct does not upset the trial court's overall sentencing scheme. We thus do not need to remand for resentencing. ***See Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006) ("[I]f our decision does not alter the overall scheme, there is no need for a remand.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/18