J-S62020-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NADON ESTES | : | |
| | : | |
| Appellant | : | No. 380 WDA 2019 |

Appeal from the Judgment of Sentence Entered, February 5, 2019,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-CR-0005116-2018.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                FILED JANUARY 13, 2020

Nadon Estes appeals from the judgment of sentence imposed following his conviction for defiant trespass.[1]  We affirm.

The relevant facts are as follows.  Estes's grandmother lived in an apartment in the East Hills Community apartment complex at 2302 Wilner Drive, in Pittsburgh, Pennsylvania.  In November of 2017, a notice of defiant trespass was issued against Estes by the complex management.  The trespass notice in question identified Estes as a black male with brown skin, a thin build, and a high-top hairstyle.  Agent Michael Gressem, who supervises security at the apartment complex, personally served the trespass notice on Estes on November 17, 2017.  The trespass notice specifically identified the

_____

[1] 18 Pa.C.S.A. § 3503(b)(1)(i).

apartment at 2302 Wilner Drive; however, it additionally stated that Estes was excluded from the entire complex for the rest of his life, including all apartments, buildings, parking lots, and streets.

Two months later, on January 19, 2018, Agent Gressem, accompanied by complex security guard Mark Strunk, responded to a complaint regarding unknown persons inside the apartment at 2302 Wilner Drive. Upon arrival at the apartment, Agent Gressem and Mr. Strunk immediately recognized Estes based on their previous encounters with him, and because of his distinctive flat-top hairstyle. Mr. Strunk also recognized Estes because his grandmother's apartment was located across the hallway from the complex's security office, and in the past, he had seen Estes on a daily basis. Mr. Strunk, who knew that Estes had been served with a notice of defiant trespass, placed him in handcuffs, and called Pittsburgh police to make an arrest.

Estes was thereafter arrested and charged with defiant trespass.[2] A non-jury trial took place on February 5, 2019. At trial, the Commonwealth presented the testimony of Agent Gressem, Mr. Strunk, and the arresting officer, Detective Nicole Rapinski. Estes presented the testimony of his aunt, Chemere Estes, who stated that Estes's father, Vernon Nadon Estes, also goes by the name "Nadon Estes," and that, at one point, he was not supposed to

_____

[2] Estes was initially charged pursuant to 18 Pa.C.S.A. § 3503(b)(1)(ii). However, prior to trial, the Commonwealth amended the defiant trespass charge to reflect that it was based on § 3503(b)(1)(i).

be on the property.[3]  Ms. Estes further testified that, on the day of Estes's arrest, she had asked him to come to the apartment to help her clean out her mother's apartment.  Ms. Estes's mother, who is also Estes's grandmother, had been hospitalized for three months, and Ms. Estes testified that she took care of her mother's apartment during this time period.

Estes also testified in his defense, and admitted that he had worn a high-top hairstyle in the past.  He claimed that he was at the apartment complex at the request of Ms. Estes on the date of his arrest.  He further testified that he believed that he was permitted to be on complex property.  At the conclusion of trial, the court found Estes guilty of defiant trespass.  Estes filed a timely notice of appeal.  Both Estes and the trial court complied with Pa.R.A.P. 1925.

Estes raises the following issue for our review:

Whether the evidence is insufficient to support Mr. Estes's conviction for defiant trespass when the Commonwealth failed to disprove beyond a reasonable doubt Mr. Estes's affirmative defense that he reasonably believed that he had been given permission to enter the property by someone licensed to do so?

Estes's Brief at 5 (unnecessary capitalization omitted).

Our standard of review of a sufficiency claim is as follows:

[W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable

---

[3] Ms. Estes did not identify the time period during which Estes's father was not supposed to be at the apartment, or whether complex management had issued him a defiant trespass notice.  Nor did she provide a physical description of Estes's father.

inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

Commonwealth v. Franklin, 69 A.3d 719, 722 (Pa. Super. 2013) (citations and quotation marks omitted). The finder of fact is free to believe all, part, or none of the evidence presented, and determines the credibility of the witnesses. Commonwealth v. Boyd, 73 A.3d 1269, 1274 (Pa. Super. 2013) (en banc).

The crime of defiant trespass is set forth in 18 Pa.S.C.A. § 3503(b)(1), which provides, in pertinent part: "[a] person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: (i) actual communication to the actor[.]" Defiant trespass contains an element of intent or mens rea; thus, a person committing that offense must know he is not privileged to enter the premises. Commonwealth v. White, 174 A.3d 61 n.1 (Pa. Super. 2017). (observing that defiant trespass under 18 Pa.C.S.A. § 3503(b)(1) includes an element of intent or mens rea, similar to the crime of criminal trespass under § 3503(a)(1)). Thus, in order to establish a violation under subsection 3503(b)(1)(i), it is necessary to prove that the defendant: (1) entered or

remained upon property without a right to do so; (2) while knowing that he had no license or privilege to be on the property; and (3) after receiving direct or indirect notice against trespass. See Commonwealth v. Wanner, 158 A.3d 714, 718 (Pa. Super. 2017).

A defense to this crime is established when the defendant demonstrates, inter alia, that he or she "reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain." 18 Pa.C.S.A. § 3503(c)(3).

Estes challenges the sufficiency of evidence regarding his mens rea to commit criminal trespass. He asserts that his aunt had dominion and control over his grandmother's apartment while she was hospitalized. Estes argues that he reasonably believed that he was permitted to be on the complex grounds when his aunt invited him to come to his grandmother's apartment. Estes asserts that, once he presented evidence at trial of his reasonable belief that he was permitted at the East Hills Community apartment complex, the Commonwealth bore the burden of disproving his affirmative defense beyond a reasonable doubt. Estes argues that the Commonwealth failed to offer sufficient evidence to disprove his "reasonable belief" affirmative defense. He additionally claims that, in finding Estes guilty, the trial court improperly relied on its disbelief of Estes's testimony rather that any affirmative form of proof.

"[The] element of intent, like every other element of the crime, must be proven beyond a reasonable doubt if the conviction is to survive a challenge

to the sufficiency of the evidence." Commonwealth v. Namack, 663 A.2d 191, 194 (Pa. Super. 1995).[4] Notably, "wholly circumstantial evidence" can be sufficient for the Commonwealth to sustain its burden. Commonwealth v. Pennix, 176 A.3d 340, 343 (Pa. Super. 2017). Thus, we focus on the evidence from which Estes's mens rea could be inferred.

Here, the trial court, sitting as fact finder, could have reasonably inferred from the circumstances that Estes was aware that he did not have a license to be on East Hills Community property. The Commonwealth provided the testimony of Agent Gressem, who identified Estes at trial, and stated that he personally served Estes with the trespass notice on November 17, 2017. N.T. Trial, 2/5/19, at 27-28. The trespass notice, which was admitted into evidence, provided a physical description of Estes, including his distinctive flat-top hairstyle. Id. at 20. The trespass notice also indicated that Estes was prohibited from being at the East Hills Community apartment complex, including all apartments, buildings, parking lots, and streets. Id. at 22.

While Estes testified that he believed he was allowed on the premises, and his aunt testified that she invited him there on the date in question, the trial court, sitting as fact-finder, did not find Estes's belief to be reasonable.

_____

[4] Estes devotes much of his brief to a discussion regarding burdens of proof. While he initially argues that, once an affirmative defense under § 3503(c)(3) is raised, the Commonwealth must disprove the affirmative defense beyond a reasonable doubt, he ultimately concedes that the affirmative defense under § 3503(c)(3) negates the mens rea element of defiant trespass. See Estes's Brief at 24 n.2 (noting that "the two issues are necessarily intertwined").

See Trial Court Opinion, 4/29/19, at 5 ("The [c]ourt was not persuaded that the invitation by [Estes's] aunt, who was neither the occupant nor lessee of the apartment, created a reasonable belief of permission to enter."). As the trier of fact, the trial court was free to disbelieve Estes's testimony offered in support of an affirmative defense under § 3503(c)(3). See Commonwealth v. Thompson, 778 A.2d 1215, 1219 (Pa. Super. 2001).

Instead, the court found the Commonwealth's evidence and arguments to be credible and persuasive. See Trial Court Opinion, 4/29/19, at 5 (noting "the credible testimony of Agent Gressem, who testified that it was in fact [Estes] who was personally served with the notice"). When viewed in the light most favorable to the Commonwealth, the evidence was more than sufficient to establish that Estes (1) entered or remained upon property without a right to do so; (2) while knowing that he had no license or privilege to be on the property; and (3) after receiving direct or indirect notice against trespass. See Wanner, 158 A.3d at 718. Thus, Estes's sufficiency challenge fails.[5]

_____

[5] Estes's reliance on Commonwealth v. Sherlock, 473 A.2d 629 (Pa. Super. 1984), and Namack, supra, is unavailing, as those cases are legally and factually distinguishable. In Sherlock, this Court ruled that the trial court erred in refusing to instruct the jury regarding the affirmative defense under § 3503(c)(3) where the property owner told the defendant to leave the premises, but the owner's daughter, who lived on the premises, granted him license to enter the property. Unlike Sherlock, this appeal involves no claim of error regarding a jury instruction. In Namack, this Court ruled that the evidence was insufficient to support defendant's conviction for defiant trespass where he presented evidence that he and his family had used a trail across his neighbor's property for many years, and his attorney advised him that he

In sum, viewing the evidence and all reasonable inferences drawn in favor of the Commonwealth, we find that the evidence was sufficient for the trial court to conclude that Estes possessed the requisite mens rea for the crime of defiant trespass.

Judgment of sentence affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2020

---

had a legal right to use the trail despite his neighbor's protests. Here, unlike in Namack, Estes did not present any evidence that he was told by an attorney that, despite being served with a defiant trespass notice from complex management, he was nevertheless authorized to be on complex property.