J-S18003-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JADIN BLIESATH | : | |
| | : | |
| Appellant | : | No. 1491 MDA 2021 |

Appeal from the Judgment of Sentence Entered October 21, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001889-2020

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:　　　　　**FILED: AUGUST 5, 2022**

Appellant, Jadin Bliesath, appeals from the judgment of sentence of 90 days' probation, imposed after he was convicted, following a non-jury trial, of disorderly conduct under 18 Pa.C.S. § 5503(a)(3). Appellant challenges the sufficiency of the evidence to support his conviction, as well as the court's determination that he was competent to stand trial. After careful review, we reverse Appellant's conviction and vacate his judgment of sentence.

The trial court briefly summarized the evidence presented at Appellant's trial, as follows:

> The Commonwealth presented evidence that [Appellant] was seen by [City of Reading Police] Officer [Sean] Driscoll yelling at random people in the area of 6th and Penn Streets in the City of Reading. After being asked to stop by the [o]fficer, and failing to do so, the [o]fficer got out of the vehicle and approached [Appellant] to again ask him to stop and ask[] for his identification. When the [o]fficer was writing down [Appellant's] information, the [o]fficer observed [Appellant] yell racial slurs and

threats at two males walking down the street while the [o]fficer was standing right in front of [Appellant].

Trial Court Opinion (TCO), 2/15/22, at 4. Specifically, Officer Driscoll stated that Appellant "yelled at the people to the southwest corner[, ']shut up you niggers[,'] and then he yelled again[, ']shut up I'm going to kill you because you are niggers[,'] and then he shouted[, ']I have two guns on me.[']" N.T. Trial, 10/21/21, at 16.

Based on these facts, Appellant was charged with disorderly conduct under 18 Pa.C.S. § 5503(a)(3). That provision reads:

A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

\*\*\*

(3) uses obscene language, or makes an obscene gesture[.]

18 Pa.C.S. § 5503(a)(3).

Appellant proceeded to a non-jury trial on October 21, 2021. At the outset thereof, Appellant's counsel indicated to the court that, "based on the numerous conversations [she had] had with [Appellant,]" she believed that he was "not competent to proceed to trial." N.T. Trial at 3. Counsel explained that she had not had any "rational discussion about the facts" with Appellant, and he also refused to get a mental health evaluation. *Id.* at 4. The court then conducted a colloquy of Appellant. *Id.* at 6-11. Although the court did not specifically state that it found Appellant competent to proceed, the court began Appellant's non-jury trial, thereby indicating it made such a finding. *Id.* at 12.

- 2 -

At the conclusion of trial, the court convicted Appellant of disorderly conduct and immediately sentenced him to 90 days' probation. *Id.* at 34. The court also directed Appellant to undergo a mental health evaluation. *Id.* Appellant filed a timely post-sentence motion, which the court denied. He then filed a timely notice of appeal.[1] Appellant also timely complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on February 15, 2022. Herein, Appellant states two issues for our review:

> [I.] Whether the Commonwealth failed to present sufficient evidence that [Appellant] used obscene language to support a guilty verdict for [d]isorderly [c]onduct.
>
> [II.] Whether the trial court's competency determination was based … [on] a deficient colloquy and the court erred in determining that [Appellant] was competent to proceed to trial.

Appellant's Brief at 4.

In assessing Appellant's first issue, we apply the following standard of review:

> When reviewing a claim that the trial court erred in determining the evidence was sufficient to prove an offense, an appellate court must assess the evidence and all reasonable inferences from that evidence most favorably to the verdict winner. ***Commonwealth v. Whitacre***, 878 A.2d 96, 99 (Pa. Super.), *appeal denied*, … 892 A.2d 823 ([Pa.] 2005). As long as the evidence and inferences provide sufficient information to establish proof beyond a reasonable doubt, the evidence is sufficient. *Id.* Further, the Commonwealth can meet its burden of reasonable doubt "by means of wholly circumstantial evidence." *Id.*

---

[1] On December 14, 2021, Appellant filed a motion to stay his sentence pending our decision in this appeal. The court granted his motion that same day.

*Commonwealth v. Pennix*, 176 A.3d 340, 342–43 (Pa. Super. 2017).

Instantly, Appellant contends that his "conviction for [d]isorderly [c]onduct is improper[,] as the Commonwealth failed to sufficiently establish that [Appellant] used obscene language." Appellant's Brief at 15. He insists that "[t]he Commonwealth established that [he] shouted and used highly offensive language, but nothing that is considered obscene under the law." *Id.*

> After careful consideration, we agree. In *Pennix*, the appellant
>
> attempted to enter the Family Court building on Ross Street, but was detained at the metal detector when a scan of her book bag revealed the presence of a knife and razor blades. [The appellant] was asked to remove the items from her bag, but she had difficulty locating them and became argumentative with the deputy. [The appellant] continued to get more and more agitated, and was heard screaming "Fuck you I ain't got time for this," "Fuck you police" and "I don't got time for you fucking police." She was subsequently instructed to leave the building, but she refused and continued to scream and be disruptive until she was escorted from the building by Sheriff's deputies.

*Pennix*, 176 A.3d at 341-42 (citations to the record omitted).

Pennix was ultimately convicted of, *inter alia*, disorderly conduct under section 5503(a)(3). In assessing her argument that the Commonwealth's evidence was insufficient to prove she used obscene language or an obscene gesture, we began by recognizing:

> It is well-settled that "the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." *Commonwealth v. Mauz*, 122 A.3d 1039, 1041 (Pa. Super. 2015) (citations omitted). The Commonwealth has cited this Court's decision

in **Commonwealth v. McCoy**, 69 A.3d 658, 665 (Pa. Super. 2013), in which we held that there was insufficient evidence to support a defendant's conviction of disorderly conduct when the defendant chanted "fuck the police" during a funeral procession of a fallen police officer.  We concluded that the defendant's words were not obscene under Section 5503(a)(3) because "there was no evidence that the chant was intended to appeal to anyone's prurient interest nor did it describe, in a patently offensive way, sexual conduct."  **Id.** at 666.

Likewise, in **Commonwealth v. Kelly**, 758 A.2d 1284 (Pa. Super. 2000), we reversed an appellant's conviction of disorderly conduct under Section 5503(a)(3) for profanely responding "fuck you, asshole" to a street department employee and accompanying the response with the extension of his middle finger.  We explained:

> The first inquiry is what is the definition of "obscene" for purposes of 18 Pa.C.S. § 5503(a)(3).  This Court has held that, for purposes of a disorderly conduct statute prohibiting the use of obscene language, language is obscene if it meets the test set forth in **Miller v. California**, 413 U.S. 15 … (1973):
>
> > (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.
>
> **Commonwealth v. Bryner**, … 652 A.2d 909, 912 ([Pa. Super.] 1995).  In **Bryner**, our Court held that the phrase "go to hell Betsy" was not obscene.  Thus, we use the **Bryner** test to determine whether words and gestures are obscene for purposes of 18 Pa.C.S. § 5503(a)(3).

**Id.** at 345.

Applying this law to the facts of Pennix's case, we explained:

Our next inquiry is whether the "F-word" and the gesture are obscene within the meaning of 18 Pa.C.S. § 5503(a)(3)….

Our Supreme Court addressed Section 5503(a)(1) (and not Section 5503(a)(3)) recently in *Commonwealth v. Hock*, … 728 A.2d 943 ([Pa.] 1999). There, a person directed a profane remark, "F- you, asshole," at a police officer. The Court concluded that the utterance was not sufficient to support a conviction of disorderly conduct under Section 5503(a)(1) because the utterance did not amount to "fighting words" under 18 Pa.C.S. § 5503(a)(1). The Court concluded that, under the facts of the case, Hock's comment did not risk an immediate breach of the peace. *Hock*, 728 A.2d at 946….

While Justice Castille dissented in *Hock*, he commented that:

> [The a]ppellant's words, while certainly obscene according to common parlance, do not fit the definition of "obscene" under Section 5503(a)(3) of the Disorderly Conduct Statute…. [L]anguage is obscene if it meets the test set forth in *Miller*….
>
> *Id.* at 947, n.1.

*Kelly*, 758 A.2d at 1286–87.

Here, as in *Kelly*, there is insufficient evidence to support [the a]ppellant's disorderly conduct conviction where her words "were angry words … having nothing to do with sex." *Kelly*, 758 A.2d at 1288. Our conclusion in *Kelly* also applies here:

> [W]hile the words and conduct used by [the a]ppellant were disrespectful, insulting and offensive, they were, in the circumstances of this case, not "obscene" within the meaning of Section 5503(a)(3). Further, the record fails to support a conclusion that [the a]ppellant's comment risked an immediate breech [*sic*] of the public peace.
>
> *Id.* (citation omitted).

*Pennix*, 176 A.3d at 345–46.

In the present case, Appellant argues:

Here, testimony presented at trial establishes that [Appellant] shouted[,] "shut up you niggers[,]" and[,] "shut up I'm going to kill you because you are niggers[,]" and that he had two guns. [Appellant] denied saying any of this in his testimony, but whether he did or not is irrelevant. Like *Bryner*[] and its progeny…,

nothing that [Appellant] said could possibly be construed as sexual or appealing to the prurient interests. The language used is, of course, vulgar and highly offensive, but, as the dissent in … **Hock** put it, the language may be "obscene according to common parlance" but it does "not fit the definition of obscene under section 5503(a)(3)." … **Hock**, 728 A.2d at 947 (Castile, J. dissenting); **see Kelly**, 758 A.2d at 1287.

[Appellant] was charged specifically under the section of disorderly conduct pertaining to obscene language. Despite the testimony regarding the volume of his voice[,] he was not charged with making unreasonable noise under 18 Pa.C.S.[] § 5503(a)(2). To the extent that his words could be considered so offensive as to become fighting words, that would fit under 18 Pa.C.S.[] § 5503(a)(1) for fighting or tumultuous behavior. **See McCoy**, 69 A.3d at 666. Instead, the evidence presented must be sufficient to establish that his language was obscene as defined in the law. [Appellant's] language cannot reasonably be construed as sexual in nature or appealing to the prurient interests and thus his conviction under the charged section for disorderly conduct must fail.

Appellant's Brief at 17-18 (citation to the record omitted).

Notably, the Commonwealth agrees with Appellant, conceding that,

[i]n this case, [Appellant's] words[,] while obscene under the common parlance, do not fit the statutory definition of obscene from the case law cited above. There is nothing about his use of the derogatory words 'nigger' which appeals to the prurient interest or depicts sexual conduct. Additionally, while [Appellant's] words likely would have qualified to sufficiently fit the crime under subsections (a) as fighting words, or subsection (b) as unreasonable noise[, it] is unfortunately not up for debate as they were not charged. The Commonwealth is tasked with proving the case which it has charged, and that is a result that did not happen here.

Commonwealth's Brief at 7.

We appreciate the Commonwealth's candor with this Court, and we concur with the parties that Appellant's conviction must be reversed. Although the trial court found that "[t]he racial slurs" used by Appellant "were clearly

- 7 -

[`]obscene language[']" within [the meaning of] the statute[,]" the court offered no legal authority to support that conclusion. TCO at 6. The case law discussed *supra* interprets 'obscene language' in the statute as meaning something that describes a sexual act or appeals to one's prurient interest. Here, the racial slurs spoken by Appellant, although deplorable and highly offensive, do not constitute 'obscene language' under section 5503(a)(3). Accordingly, we reverse his conviction for disorderly conduct and vacate his judgment of sentence. Given this disposition, we need not address Appellant's second issue challenging the court's finding him competent to stand trial.

Conviction reversed. Judgment of sentence vacated.

Judge McLaughlin joins this memorandum.

Judge McCaffery concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/05/2022