**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Linda C. KELLY, Appellant.**

Superior Court of Pennsylvania.

Argued April 6, 2000.

Filed Aug. 28, 2000.

William W. Boyd, Lancaster, for appellant.

Chad B. Foster, Asst. Dist. Atty., Lancaster, for Com., appellee.

Before: STEVENS, MUSMANNO, and LALLY–GREEN, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Linda C. Kelly, appeals the judgment of sentence of a $25.00 fine and costs imposed following her summary conviction of disorderly conduct for using obscene language.[1] We reverse.

¶ 2 The facts, as found by the trial court, are as follows.

> Appellant, while driving a car, came upon a work area on a public highway. A borough street department employee approached her vehicle when it appeared that she was not responding to directions. The worker asked her what she intended to do whereupon appellant said, "Fuck you, asshole" and gave the worker the "finger".

Trial Court Opinion, 7/23/99, at 2. On April 29, 1998, Appellant was issued a citation for disorderly conduct, on the basis of using obscene language and making an obscene gesture. On August 10, 1998, a district justice adjudicated Appellant guilty of disorderly conduct and sentenced Appellant to a $25.00 fine and costs.

¶ 3 On June 29, 1999, after a summary appeal hearing, the trial court found Appellant guilty of disorderly conduct and imposed the same fine and costs. This appeal followed.

¶ 4 Appellant raises three issues on appeal: ·

1) Whether the Defendant used obscene language or made an obscene gesture, either of which is required under § 5503(a)(3) prosecutions?

2) Whether the Defendant used "fighting" words sufficient to constitute a

---

1.   18 Pa.C.S. § 5503(a)(3).

violation of the disorderly conduct provisions of the Crimes Code?

3) Whether the evidence presented was sufficient as a matter of law to convict the Defendant of the crime actually lodged against her?

Appellant's Brief at 3.

¶ 5 Although Appellant raises three issues in her Statement of Questions Involved, Appellant states, in the argument portion of her brief, that "the question argued is whether the language used and the gesture described are obscene." Appellant's Brief at 6. Appellant admits using the language and making the gesture described but argues they are not obscene. *Id.* at 8.

■ ¶ 6 We will, thus, address whether "the language used and the gesture described are obscene" under 18 Pa.C.S. § 5503(a)(3) in the circumstances of this case. This Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner and determine if the evidence was sufficient to enable the fact-finder to establish all the elements of the offense. *Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super.1997), *appeal denied*, 555 Pa. 687, 722 A.2d 1056 (1998).

¶ 7 Appellant's case involves a conviction under 18 Pa.C.S. § 5503(a)(3). Section 5503(a) provides as follows:

Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture;

(4) creates a hazardous or physically offensive condition by any act which

serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a).

■ ¶ 8 The first inquiry is what is the definition of "obscene" for purposes of 18 Pa.C.S. § 5503(a)(3). This Court has held that, for purposes of a disorderly conduct statute prohibiting the use of obscene language, language is obscene if it meets the test set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973):

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Commonwealth v. Bryner*, 438 Pa.Super. 473, 652 A.2d 909, 912 (1995) In *Bryner*, our Court held that the phrase "go to hell Betsy" was not obscene. Thus, we use the *Bryner* test to determine whether words and gestures are obscene for purposes of 18 Pa.C.S. § 5503(a)(3).

¶ 9 Our next inquiry is whether the "F-word" and the gesture are obscene within the meaning of 18 Pa.C.S. § 5503(a)(3). While we have found no jurisprudence directly on point, we have found cases that provide guidance as to the proper resolution of this case, *e.g., Commonwealth v. Hock*, 556 Pa. 409, 728 A.2d 943 (1999); *Commonwealth v. Fenton*, 750 A.2d 863, 2000 Pa.Super. 102; and *Brockway v. Shepherd*, 942 F.Supp. 1012 (M.D.Pa.1996).

¶ 10 Our Supreme Court addressed Section 5503(a)(1) (and not Section 5503(a)(3)) recently in *Commonwealth v. Hock*, 556 Pa. 409, 728 A.2d 943 (1999). There, a person directed a profane remark, "F— you, asshole," at a police officer. The Court concluded that the utterance was not sufficient to support a conviction of

disorderly conduct under Section 5503(a)(1) because the utterance did not amount to "fighting words" under 18 Pa. C.S. § 5503(a)(1). The Court concluded that, under the facts of the case, Hock's comment did not risk an immediate breach of the peace. *Hock*, 728 A.2d at 946.

¶ 11 The Court then said the following: Moreover, the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace; it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more that the alleged criminal has the right to operate within its clearly outlined circumference.

*Id.* at 947.

¶ 12 While Justice Castille dissented in *Hock*, he commented that:

Appellant's words, while certainly obscene according to common parlance, do not fit the definition of "obscene" under Section 5503(a)(3) of the Disorderly Conduct Statute.... [L]anguage is obscene if it meets the test set forth in *Miller* ....

*Id.* at 947, n. 1.

¶ 13 We recently addressed the use of an allegedly obscene word in the context of harassment by communication, 18 Pa. C.S.A. 5504(a), in *Commonwealth v. Fenton*, 750 A.2d 863, 2000 Pa.Super. 102. Section 5504(a) provides, in pertinent part, that a person commits said crime if:

with intent to harass another, he: makes a telephone call without intent of legitimate communication or addresses to or about such other person any lewd, lascivious or indecent words or language of anonymously telephones another person repeatedly; or makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse languages.

There, the appellant made one offending call to a congressman and threatened to shoot the "F—ing head" off the congressman and his aide. We concluded that while appellant's use of the "F-word" "won him no praise for eloquence or intelligence," such use of the "F-word" did not constitute sexually explicit language because, in context, it had nothing to do with sex. *Fenton*, 750 A.2d 863, 866–67, 2000 Pa.Super. 102, ¶ 15, ¶ 16.

¶ 14 We observe that Section 5503(a)(3) has been addressed by the federal court in *Brockway v. Shepherd*, 942 F.Supp. 1012, 1016 (M.D.Pa.1996). There, the federal district court for the Middle District addressed the question of whether an appellant violated Section 5503(a)(3) by making an obscene gesture, extending the proverbial "middle finger," after a vehicle stop. That Court observed that there are times when conduct using a base term for sex may be intended to express disrespect for someone and to offend that person, yet not constitute offensive communication. The *Brockway* Court reasoned that the intent behind the crime of disorderly conduct was to prevent people from using gestures or language in a way that would "engender public turmoil" and found it "would be a rare person who would be 'turned on' by the display of a middle finger or the language it represents...." *Brockway*, 942 F.Supp. at 1015.

¶ 15 Guided by the above, we now examine whether, in the circumstances of Appellant's case, the language and gesture used are obscene for purposes of 18 Pa. C.S. § 5503(a)(3). The record reveals that Appellant was in her car at a public intersection where some roadwork was being performed. N.T., 6/29/99, at 4–8. Appellant encountered an employee of the Borough's street department. *Id.* This employee was directing traffic and motioning the traffic with flags, one in each hand. *Id.* When the employee failed to communicate with Appellant by use of the flags, the employee walked over to Appellant's car and engaged in a conversation. *Id.* The conversation ended when Appellant

directed the phrase "F— you" to the employee. *Id.* at 4. The employee walked back toward the intersection. *Id.* at 5. Appellant then drove past him, directed the words "F— you asshole" towards him and, at the same time, added a hand gesture consisting of an extended middle finger. *Id.*

¶ 16 Are the language and gesture obscene under *Bryner*? Echoing Justice Castille's observations, we do not dispute that Appellant's words are obscene according to common parlance. Yet, as he cautioned, our relevant test is the *Miller* test, *i.e.*, the *Bryner* test. *Hock*, 728 A.2d at 947, n. 1. There, he concluded that use of the "F-word" did not fit the definition of "obscene" under Section 5503(a)(3). *Id.*

¶ 17 We now inquire whether "the average person, applying contemporary community standards," would find that the utterance and the gesture, in the context of the circumstances of the case, appeal to the prurient interest and describe, in a patently offensive way, sexual conduct specifically defined by the applicable state laws.[2] We are guided by Judge Eakin's astute comment in *Fenton* :

> One need not cuss like the proverbial sailor to know that in today's America the "F-word" is used much too freely, but very creatively. Anyone attending an R-rated movie has heard the word used to describe the good, the bad and the ugly.... Here [the F-word is language that] was clearly meant to be emphatic, even coarse, and in this appellant succeeded. However, the only reasonable perception of the angry [word] had nothing to do with sex.

750 A.2d 863, 867, 2000 Pa.Super. 102, ¶ 16.

¶ 18 Here, the record supports a conclusion that Appellant's use of the "F-word" and use of the middle finger were angry words and an angry gesture having nothing to do with sex. The words and gesture were meant to express disrespect to, and

to offend, the Borough employee. The record fails to support a conclusion that the words and gesture, as used in the circumstances of Appellant's case, appeal to the prurient interest or a depiction, in a patently offensive way, of relevant sexual conduct. Thus, while the words and conduct used by Appellant were disrespectful, insulting and offensive, they were, in the circumstances of this case, not "obscene" within the meaning of Section 5503(a)(3). Further, the record fails to support a conclusion that Appellant's comment risked an immediate breech of the public peace. *See, Hock*, 728 A.2d at 946–47. On review of the record, the evidence is insufficient to support a conviction of disorderly conduct under Section 5503(a)(3). Appellant's claim has merit.

¶ 19 Accordingly, on the basis of the foregoing, we reverse Appellant's judgment of sentence.

¶ 20 Judgment of sentence reversed.

¶ 21 Judge STEVENS files a concurring opinion.

STEVENS, J., concurring:

¶ 1 I concur with the Majority's interpretation of the statute, especially as it relates to the legal definition of "obscenity."

¶ 2 In the instant case, however, Appellant, while driving a car, came upon a work area on a public highway where there were several borough street department employees. For the safety of motorists, one employee approached Appellant in an effort to direct traffic. Appellant responded with profanity, i.e., "fuck you, asshole," and drove away with her left arm extended out her driver's window, giving the borough employee "the finger" in plain view of the public.

¶ 3 I would find, under the circumstances of this case, that Appellant's behavior was clearly combative, particularly in today's culture of "road rage."

---

**2.** Such a phrase has no serious literary, artistic, political or scientific value. *See,* the third

leg of the *Bryner* test. 652 A.2d at 912.

¶ 4 Moreover, arguably, the emotionally charged profanity coupled with the obscene gesture could be considered "fighting words" in violation of § 5503(a)[3]. *See Commonwealth v. Mastrangelo*, 489 Pa. 254, 262, 414 A.2d 54, 58 (1980) (citation omitted) (holding that "fighting words" are "those which by their utterance inflict injury or tend to incite an immediate breach of the peace").

¶ 5 Nevertheless, I urge the Pennsylvania Legislature to revise the disorderly conduct statute to specifically prohibit the type of conduct exhibited by Appellant in this case. Public employees, volunteer firefighters and emergency personnel who are carrying out their duties for the safety of citizens should not be subjected to such abusive behavior as exhibited by Appellant. The current state of the law does nothing to discourage such conduct, and it would be appropriate for the Legislature to review and revise the statute accordingly.

3. The statute provides, in pertinent part: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: ... engages in fighting or threatening, or in violent or tumultuous behavior...." 18 Pa.C.S. § 5503(a)(1).