J-A17041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN RAY DUNKIN | : | |
| | : | |
| Appellant | : | No. 1864 WDA 2017 |

Appeal from the Judgment of Sentence November 15, 2017
in the Court of Common Pleas of Butler County,
Criminal Division at No(s):  CP-10-SA-0000151-2017

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:            **FILED AUGUST 31, 2018**

Justin Ray Dunkin ("Dunkin") appeals from the judgment of sentence imposed following his conviction of disorderly conduct.   18 Pa.C.S.A. § 5503(a)(3).  We reverse the judgment of sentence and discharge Dunkin.

The trial court aptly summarized the facts as follows:

[T]he police were called to [Dunkin's] residence at 307 North Chestnut Street in the City of Butler during the early morning of July 30, 2017, for a reported domestic disturbance. The houses in that area are close together.  The incident began sometime shortly after 5:00 A.M.  Four police officers arrived on the scene, including Officer Cheryl Litz.  Prior to arriving on the scene, the officers were informed that a gun was involved and were advised that [Dunkin's] girlfriend would meet them outside. When they arrived, [Dunkin's] girlfriend was not there.  Once on the scene, Officer Shulick retrieved his rifle from the patrol vehicle.  Officer Litz and Sergeant Vilotti approached the residence and knocked on the front door.   [Dunkin's] roommate and [Dunkin's] girlfriend, who had called the police, came to the door. [Dunkin's] girlfriend was asked to step outside to speak to the police.

[Dunkin], who was on the second floor of the residence, was asked at some point to come downstairs. Police officers asked [Dunkin] to show his hand. He complied. [Dunkin] indicated that he would not speak to anyone other than Sergeant Vilotti. Sergeant Vilotti, who was on the scene, spoke to [Dunkin] near the doorway of the residence. [Dunkin's] girlfriend indicated that she wanted to retrieve her belongings from the residence. The police officers told her to make one trip inside. [Dunkin], at that point, began making verbal threats to [Dunkin's] girlfriend such that Officer Litz had to intervene. Officer Litz told [Dunkin] that he must not destroy [Dunkin's] girlfriend's property. At that point, [Dunkin] began swearing and calling Officer Litz and his girlfriend vulgar names. [Dunkin], who appeared to Officer Litz to be under the influence of alcohol, called Officer Litz a "f***ing c**t." [Dunkin] was located near the doorway of the residence or on the front porch when he was shouting the vulgarities. The officers warned [Dunkin] to stop several times. [Dunkin] refused and continued to cuss and swear. The incident lasted for several minutes during which time [Dunkin's] girlfriend made several trips inside the residence to retrieve her belongings.

Trial Court Opinion, 1/25/18, 1-2 (unnumbered).

Dunkin was charged with disorderly conduct, a summary offense. The magisterial district court found Dunkin guilty of disorderly conduct. Dunkin filed a timely appeal to the court of common pleas. On November 15, 2017, following a *de novo* trial, the trial court found Dunkin guilty of disorderly conduct, and fined him $100. Dunkin filed a timely Notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Dunkin raises the following claims for our review:

1. Whether [Dunkin's] shouts of "fucking cunt" at his girlfriend and a police officer from the porch of his house constituted "obscene language" in violation of the disorderly conduct statute, 18 [Pa.C.S.A.] § 5503(a)(3)?

2. Whether the evidence was sufficient to prove that [Dunkin] intentionally caused or recklessly created a risk of public inconvenience, annoyance or alarm by his statements?

3. Whether a conviction for such statements violates the First Amendment of the United States Constitution?

Brief for Appellant at 4.

In Dunkin's first issue, he argues that the evidence was insufficient to support his disorderly conduct conviction because the insult, "fucking cunt," is not obscene. *Id.* at 10. He claims that vulgar insults in complaint, protest, or anger do not violate section 5503(a)(3). *Id.* Dunkin further contends that angry words that do not appeal to the listener's interest in sexual conduct or describe sexual conduct, are insufficient to support a conviction under section 5503(a)(3). *Id.* at 11-13.

In reviewing a claim challenging the sufficiency of evidence, we determine whether,

> viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation

omitted).

The Pennsylvania Crimes Code defines disorderly conduct, in relevant

part, as follows:

> **(a) Offense defined. —** A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> ***
>
> (3) uses obscene language, or makes an obscene gesture[.]

18 Pa.C.S.A. § 5503(a)(3).

> The first inquiry is what is the definition of "obscene" for purposes of 18 Pa.C.S.[A.] § 5503(a)(3). This Court has held that, for purposes of a disorderly conduct statute prohibiting the use of obscene language, language is obscene if it meets the test set forth in *Miller v. California*, 413 U.S. 15 (1973):
>
> > (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.
>
> Moreover, the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace; it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more that the alleged criminal has the right to operate within its clearly outlined circumference.

*Commonwealth v. McCoy*, 69 A.3d 658, 665 (Pa. Super. 2013) (some citations and quotation marks omitted); *see also Commonwealth v. Kelly*, 758 A.2d 1284, 1288 (Pa. Super. 2000) (stating that while words may be disrespectful, insulting and offensive, they are not necessarily "obscene" under section 5503(a)(3)); *Commonwealth v. Fenton*, 750 A.2d 863, 866-67 (Pa. Super. 2000) (noting that the "F-word" is used to express emotions and may be used as a verb, noun, adverb or expletive, and may be indecent, but is not always descriptive of an act of sex).

Here, the police arrived at Dunkin's house after receiving a call from Dunkin's girlfriend. N.T., 11/15/17, at 5-6. Dunkin's girlfriend told the police that she wanted to retrieve her belongings; however, Dunkin began making verbal threats to the girlfriend. *Id.* at 8-9. When Officer Litz intervened and told Dunkin not to destroy his girlfriend's property, Dunkin called Officer Litz a "fucking cunt." *Id.* at 9. Dunkin also swore, and called Officer Litz, other officers, and his girlfriend various other vulgar names. *Id.* at 9-10. This incident lasted around twenty minutes. *Id.* at 10.

Upon our review of the evidence, viewed in a light most favorable to the Commonwealth, Dunkin's use of "fucking cunt" was not used to describe an act of sex, and did not appeal to anyone's prurient interest. Further, there is no evidence that the other profanities Dunkin was shouting were sexual in nature. While Dunkin's statements were vulgar, they were not obscene as proscribed by section 5503(a)(3).

Thus, we reverse his judgment of sentence. **_See McCoy_**, 69 A.3d at 666 (stating that appellant's chant of "fuck the police" during an officer's funeral procession was not obscene under section 5503(a)(3) because it was not "intended to appeal to anyone's prurient interest[,] nor did it describe, in a patently offensive way[,] sexual conduct."); **_see also Kelly_**, 758 A.2d at 1288 (holding that appellant's use of the "F-word," and giving the middle finger to a borough employee, while offensive, had nothing to do with sex, and therefore, was not found obscene under the disorderly conduct statute).[1]

Judgment of sentence reversed. Dunkin discharged. Jurisdiction relinquished.

Judge Kunselman joins the Memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2018

---

[1] Because of our disposition regarding Dunkin's first issue, we need not address his other two issues.