J-S12029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY EARL ROSENBERGER | : | |
| | : | |
| Appellant | : | No. 477 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 4, 2023
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002056-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY EARL ROSENBERGER | : | |
| | : | |
| Appellant | : | No. 496 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 4, 2023
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006563-2021

BEFORE:  DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:                    **FILED JULY 03, 2024**

Gregory Earl Rosenberger ("Rosenberger") appeals from the judgment of sentence following his jury convictions of four counts of disorderly conduct, graded as third-degree misdemeanors, and two counts of the summary offense of harassment.[1]  For the reasons discussed below, we affirm.

_____

[1] ***See*** 18 Pa.C.S.A. §§ 5503(a)(2), (3), and 2709(a)(3).

We take the underlying facts and procedural history from our review of the certified record.

Rosenberger lived with his parents when B.V., her husband J.V., and their three children, sons J. and P., and daughter E. (collectively "the victims"), moved next door in 2015.[2] *See* N.T., 9/20/22, at 84-89. In 2017, P was diagnosed with cancer. *See id*. at 85; 123-24. Because of this, B.V. worked from home for the next three years. *See id*. at 85-86.

In October 2019, Rosenberger, who was not well-acquainted with B.V., came to her home and asked to speak with her. *See id*. 96-97. Rosenberger explained he had posted upsetting notes to B.V. in his window. *See id*. at 97. Rosenberger told B.V. he suffered from depression, had no friends, and then sexually propositioned her. *See id*. at 97-98. Rosenberger looked at her genital area and said, "Come on, you're not even wet right now." *Id*. at 98. B.V. asked him to leave, and Rosenberger again propositioned her. *See id*. at 99. B.V. escorted him out of her home. *See id*.

A few minutes later, Rosenberger returned; while he initially apologized and asked B.V. not to tell her husband, he then propositioned her again. *See id*. at 100-01. The incident so concerned B.V. that she called J.V. at work and asked him to activate the home's security cameras. *See id*. at 101. She also

_____

[2] The houses were positioned so that you could see into each house's windows from the other. *See* N.T., 9/20/22, at 86-96 and Commonwealth's Exhibit 1.

contacted her sister, who came to B.V.'s home and called the police. ***See id***. at 102-03. Despite the presence of the police, Rosenberger knocked on B.V.'s door. ***See id***. at 102. The police spoke with Rosenberger and told him B.V. did not want to have any contact with him. ***See id***. at 102; N.T., 9/21/22, at 54-55.

Rosenberger commenced a sustained campaign of harassment against B.V. and her family, necessitating multiple calls to the police. ***See*** N.T., 9/20/22, at 103-05; 9/21/22, at 31-32, 44-45, 56. Rosenberger flashed lights into B.V.'s home and placed notes, some including further sexual propositions, in windows facing B.V.'s home. ***See*** N.T., 9/20/22, at 103-05. Rosenberger would repeatedly shout and hit the windows to draw attention to the notes. ***See id***.

The police advised B.V. to document Rosenberger's actions and call them whenever Rosenberger became problematic. ***See id***. at 105, 112, 132. Much of Rosenberger's behavior was recorded on B.V.'s home security system. ***See id***. at 113-31; ***see also*** N.T., 9/21/22, at 72-79.

In January 2020, the police arrested Rosenberger. ***See id***. at 106; N.T., 9/21/22, at 35, 50. As a result of that arrest, Rosenberger pleaded guilty to harassment in November 2020; the trial court sentenced Rosenberger to probation and ordered him to have no contact with B.V. and her family.

Despite this, Rosenberger continued to bang on the windows, talking and shouting profanity at B.V. and her children, as well as yelling about

suicide. *See id*. at 110-11. Rosenberger also began to make threats against the victims, shouting that he thought about killing B.V. and her family. *See id*. at 110-12. Rosenberger would come out of his house to watch the family, and, on a few occasions, B.V. was too frightened to leave her car and the police would escort her into her home. *See id*. J.V. confirmed B.V.'s testimony regarding Rosenberger's behavior, including hearing Rosenberger say he was going to kill the "whole fucking family." N.T., 9/21/22, at 71-72; *see also id*. at 74.

In September 2020, B.V.'s home security system recorded Rosenberger saying, "[b]eat you, stab you, shoot you, bleed you." *Id*. at 77. In an earlier recording, Rosenberger stated B.V.'s "family, friends, and neighbors aren't safe." *Id*. at 79. In a February 2021 recording, Rosenberger, presumably referring to B.V., called her "[f]ucking smiling, fucking piece of shit." N.T., 9/20/22, at 116. On a March 8, 2021, recording, Rosenberger loudly said, "[f]uck those mother fuckers [sic]," and "[f]uck you, cunt," and "you're trying to prosecute a person for jerking off in front of children." *Id*. at 115-20. In the same recording, Rosenberger made references to B.V.'s children and B.V. "exploiting" her child with cancer. *Id*. at 119-23. As a result of the March 2021 incident, the police arrested Rosenberger and charged him with stalking, disorderly conduct, and harassment at case CP-46-CR-0002056-2021. Rosenberger was released on bail and, as a condition of bail, told to have no contact with the victims.

However, Rosenberger continued to harass the victims. In October 2021, a lengthy recording captured Rosenberger calling B.V. "[a] beautiful woman," and then saying, "I can't wait till you're subject to having to look at a [sic] abuser of women and children for the rest of your life." *Id*. at 126-27. B.V. could hear Rosenberger from inside her home; he next stated something was "equivalent to a dick pic," four separate times. *Id*. at 127. Other recordings from October 2021, captured Rosenberger cursing and yelling at the victims in the middle of the night. *See id*. at 129-30.

At trial, J.V. testified that between June and October 2021, Rosenberger was captured on video saying, presumably in reference to J.V., he was going to "bash that fucker [sic] joker's head in.'" N.T., 9/21/22 at 78. J.V. recalled he was packing the car for a family vacation when Rosenberger came outside his house to watch him and said, "yeah, five caskets will do." *Id*. at 79-80. The statement concerned J.V., who called the police, and they escorted the victims into their car. *See id*. at 79-81.

The police again arrested Rosenberger and charged him with stalking, disorderly conduct, and harassment at case number CP-46-CR-0006563-2021 with respect to incidents occurring between June and October 2021. The trial court consolidated the cases for trial and a jury convicted Rosenberger of the above offenses but acquitted him of three counts of harassment. The jury deadlocked on two charges of stalking. After receipt of a presentence investigation report and various psychological evaluations, the trial court

sentenced Rosenberger to an aggregate sentence of time-served to twelve months in prison to be followed by probation. Rosenberger was again ordered to have no contact with the victims and to stay away from their residence. Rosenberger filed timely post-sentence motions, which the trial court denied. This timely appealed followed.[3]

On appeal, Rosenberger raises three issues for our review:

I.      Was the evidence presented at trial insufficient to sustain the guilty verdict at CP-46-CR-0002056-2021 for count five, disorderly conduct under 18 Pa.C.S.A. § 5503(a)(3), because it was not proven beyond a reasonable doubt that [Rosenberger] — between April 1, 2020[,] and March 8, 2021[,] — used "obscene language"[?]

II.     Was the evidence presented at trial insufficient to sustain the guilty verdict at CP-46-CR-0006563-2021 for count six, disorderly conduct under 18 Pa.C.S.A. § 5503(a)(3), because it was not proven beyond a reasonable doubt that [Rosenberger] — between June 24, 2021[,] and June 26, 2021[,] — used "obscene language"[?]

III.    Was the evidence presented at trial insufficient to sustain the guilty verdict at CP-46-CR-0006563-2021 for count five, disorderly conduct under 18 Pa.C.S.A. § 5503(a)(2), because it was not proven beyond a reasonable doubt that

_____

[3] Rosenberger and the trial court complied with Pa.R.A.P. 1925. We note although Rosenberger filed two notices of appeal in compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), the notices of appeal listed both docket numbers. However, in **Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa. Super. 2020) (*en banc*), this Court held that even if an appellant listed multiple docket numbers in the notices of appeal, the appeal need not be quashed so long as the appellant filed the correct numbers of notices of appeal. Because Rosenberger filed the correct number of notices of appeal, we decline to quash the instant appeal, which this Court consolidated *sua sponte*.

> [Rosenberger] — between June 24, 2021[,] and October 26, 2021[,] — made "unreasonable noise"[?]

Rosenberger's Brief at 3[4] (capitalization and citations standardized).[5]

All three of Rosenberger's issues challenge the sufficiency of the evidence. Pertinently:

> [w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[]finder to find every element of the crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[]finder.

***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (citations and quotation marks omitted).

The crimes code defines disorderly conduct as follows:

**(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

\* \* \* \* \*

(2) makes unreasonable noise;

_____

[4] Rosenberger contends in each of his questions that his actions were not done "with intent to cause substantial harm or serious inconvenience, or after reasonable warning or request to desist." ***See*** Rosenberger's Brief at 3. However, he abandons these claims in the body of his brief and, therefore, we have omitted them from the statement of the questions involved and do not address them.

[5] For ease of disposition, we reordered the issues in Rosenberger's brief.

(3) uses obscene language, or makes an obscene gesture[.]

18 Pa.C.S.A. § 5503(a)(2) and (3). The statute does not define either "unreasonable noise" or "obscene." *See id*. It defines "public" as "affecting or likely to affect persons in a place to which the public or a substantial group has access; . . . any neighborhood, or any premises which are open to the public." 18 Pa.C.S.A. § 5503(c).

In his first and second issues, Rosenberger argues the Commonwealth failed to prove he made "obscene" comments or gestures within the meaning of 18 Pa.C.S.A. § 5503(a)(3) between April 1, 2020, and March 8, 2021, and between June 24, 2021, and October 26, 2021. *See* Rosenberger's Brief, at 14, 21. Specifically, Rosenberger avers that while he used "vulgar language" and "arguably threats of violence, none of them involve conduct appealing to a prurient interest or the description of sexual conduct in a patently offensive way." *Id*. at 18; *see also id*. at 23.

The trial court stated, "[c]ontext is key to comprehending [Rosenberger's] course of disorderly-conduct crimes." Trial Court Opinion, 7/13/23, at 18. After a lengthy recap of the testimony which meticulously documented Rosenberger's daily outbursts of sexually-laced profanities directed at B.V. and her family, *see id*. at 18-30, the trial court explained which evidence it believed was sufficient to sustain the conviction:

> [Rosenberger's] aggressively uttering, "[f]uck you, cunt,"
> for example, on March 8, 2021, at the end of the time period
> covered by the first criminal information, had definite offensive

sexual connotations, judged in the context of his repeated unwanted sexual advances to B.V. when he first encountered her, all the way through his sexually-charged tirades directed at her and her family continuing up to and past the moment of those particular obscene words. [Rosenberger's] words uttered, sometimes shouted at the innocent family next door, in the toxic environment that he himself by his words and actions had created, went as far down the path of obscenity as words alone can [go].

*Id*. at 32 (record citations omitted).

In determining whether the evidence was sufficient to sustain Rosenberger's conviction for disorderly conduct — obscene language, we must first determine what the definition of "obscene" is for purposes of 18 Pa.C.S.A. § 5503(a)(3). We have held language is obscene if it meets the test set forth in *Miller v. California*, 413 U.S. 15 (1973):

(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Commonwealth v. Bryner*, 652 A.2d 909, 912 (Pa. Super. 1995) (quotation marks omitted). Pennsylvania law defines sexual conduct as "[p]atently offensive representations or descriptions of ultimate sexual acts . . . and patently offensive representations or descriptions of masturbation . . . and lewd exhibition of the genitals." 18 Pa.C.S.A. § 5903.

Rosenberger relies on this Court's decisions in *Commonwealth v. Pennix*, 176 A.3d 340 (Pa. Super. 2017), *Commonwealth v. McCoy*, 69

A.3d 658 (Pa. Super. 2013), and **Commonwealth v. Kelly**, 758 A.2d 1284 (Pa. Super. 2000) to support his contention that his language was not obscene. However, Rosenberger's reliance on these cases is misplaced.

**Pennix**, **McCoy**, and **Kelly**, all involve single instances where a member of the public interacted with a public official in the course of their official duties and used the "F-word" and/or a middle finger gesture. **See Pennix**, 176 A.3d at 342; **McCoy**, 69 A.3d at 661; **Kelly**, 758 A.2d at 1285. In each case, we concluded the evidence was insufficient to sustain a conviction for disorderly conduct — obscene language because, based upon the surrounding circumstances, the "words were angry words ... having nothing to do with sex." **Pennix**, 176 A.3d at 346 (citation and quotation marks omitted); **see also McCoy**, 69 A.3d at 665-66 (holding evidence was insufficient to sustain the conviction for disorderly conduct — obscene language where trial court admitted the conviction was not based on the "obscene character of the words, but that . . . [they] were fighting words"); **Kelly**, 758 A.2d at 1288 (holding the appellant's "use of the 'F-word' and use of the middle finger were angry words and an angry gesture having nothing to do with sex.").

We agree with the trial court that context matters. **See Kelly**, 758 A.2d at 1287-88 (discussing the importance of context in determining whether an utterance is obscene). The record plainly shows Rosenberger made unwanted sexual advances to B.V., when she refused, he engaged in an almost two-year course of conduct which included repeated, loud episodes of cursing, ranting,

and threatening B.V., her husband, and children. Rosenberger was undeterred by his arrests, a guilty plea to harassment, and repeated warnings to stay away from B.V. and her family. His actions were entirely different from the single incidents where the defendants angered at public officials cursed them.

With respect to the first period, on March 8, 2021, B.V.'s security system recorded Rosenberger saying, "[F]uck you, cunt," and making four separate remarks that B.V. was "trying to prosecute a person for jerking off in front of children." N.T., 9/20/21, at 117; Commonwealth's Exhibit 3, at 2:19-2:23, 3:00-3:08, 4:35-4:45, 9:10-9:14. Taken as a whole, Rosenberger's rant, where he used an offensive term for female genitalia and a lewd term for describing masturbation, particularly when paired with the reference to children, all directed at a woman who refused his sexual advances, appealed to the prurient interest, described sexual conduct in a patently offensive way, and had no serious literary, artistic, political, or scientific value. *See Bryner*, 652 A.2d at 912.

With respect to the second period, on October 2, 2021, B.V.'s security system recorded Rosenberger calling B.V. a "beautiful woman," then describing his conduct with respect to her as the "equivalent of a dick pic," asking "how high quality that dick pic was," stating that "dick pics usually have a way of giving the warning and a choice," and that he hoped B.V. and her family remembered the "dick pic." N.T., 9/20/22, at 126-27; *see also*

Commonwealth's Exhibit C-4 at 0:36-4:10. The phrase "dick pics" refers to pictures of male genitalia which are sent to others for the purpose of inciting sexual thoughts. Thus, we again conclude Rosenberger attempted to appeal to a prurient interest, described his conduct in a lewd and patently offensive way, and there was no serious literary, artistic, political, or scientific value to his words. **See Bryner**, **supra**. Rosenberger's first and second issues do not merit relief.

In his third issue, Rosenberger contends the Commonwealth failed to prove he made "unreasonable noise" within the meaning of 18 Pa.C.S.A. § 5503(a)(2) between June 24, 2021, and October 26, 2021. **See** Rosenberger's Brief at 18. Specifically, Rosenberger maintains the Commonwealth was required to prove he created unreasonable noise under circumstances "affecting or likely to affect persons in a place to which the public or a substantial group has access" and Rosenberger's conduct only affected the victims. **Id**. at 21. Moreover, Rosenberger argues the record did not show "the level of noise produced by [him] was inconsistent with neighborhood tolerance or standards[.]" **Id**.

Rosenberger waived this claim. In his Rule 1925(b) statement, he averred, "[i]nsufficient evidence was presented at trial to sustain the guilty verdict for count five, disorderly conduct under 18 Pa.C.S.[A.] § 5503(a)(2), because it was not proven beyond a reasonable doubt that [Rosenberger] . . . made "unreasonable noise," nor that he did so to cause substantial harm or

serious inconvenience, or after reasonable warning or request to desist."

Pa.R.A.P. 1925(b) Statement, 3/16/23, at 1 (unnumbered).

"[T]he Pa.R.A.P. 1925(b) statement must be sufficiently 'concise' and 'coherent' such that **the trial court judge may be able to identify the issues to be raised on appeal**[.]" **Commonwealth v. Vurimindi**, 200 A.3d 1031, 1038 (Pa. Super. 2018) (emphasis added). Here, Rosenberger raised a boilerplate challenge to the sufficiency of the evidence underlying his conviction for disorderly conduct — unreasonable noise. There was no way for the trial court to determine from Rosenberger's generic claim the specific issues he argues in his brief. Thus, the trial court did not address these arguments in its Rule 1925(a) opinion. **See** Trial Court Opinion, 7/13/23, at 33-36. Because Rosenberger failed to properly preserve this argument, it is waived. **See Vurimindi**, 200 A.3d at 1038. [6]

_____

[6] Moreover, even if preserved, the claim would not merit relief. The trial court explained:

> The jury heard that [Rosenberger] engaged in conduct described as "screaming[,]" and "yelling, screaming profanities[.]" . . . [I]n October 2021, audio of which the jury heard, he was ranting about his neighbors past 2:00 and 3:00 in the morning, then was back at it again at 2:00 or 3:00 in the afternoon. His raving would drive the children in the house, but he could still be heard from within what should have been its safe and sound confines.

Trial Court Opinion, 7/13/23, at 33-34 (record citations omitted). We find no error. **See e.g.**, **Commonwealth v. Little**, 297 A.3d 721, 2023 WL 2926406 (Pa. Super. Apr. 13, 2023) (unpublished memorandum at *5) (affirming

*(Footnote Continued Next Page)*

Accordingly, for the reasons stated above, we find Rosenberger's issues are either meritless or waived. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/3/2024

_____

appellant's conviction for disorderly conduct — unreasonable noise, where appellant expressed her annoyance with her neighbors by banging pots and pans for several hours in the direction of their yards); **Commonwealth v. Tyman**, 249 A.3d 1126, 2021 WL 387175 (Pa. Super. Feb. 3, 2021) (unpublished memorandum at *4) (affirming appellant's conviction for disorderly conduct — unreasonable noise where neighbors where able to hear the appellant assault his girlfriend); Pa.R.A.P. 126(b) (unpublished Superior Court memoranda filed after May 1, 2019, may be cited for their persuasive value).