J-S43017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHEYENNE O'DALE SNEAD | : | |
| | : | |
| Appellant | : | No. 588 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 30, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002524-2023

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:       **FILED MARCH 10, 2026**

Cheyenne O'Dale Snead appeals from the judgment of sentence entered following his convictions for the summary offenses of defiant trespass and disorderly conduct.[1] He challenges the sufficiency of the evidence supporting his disorderly conduct conviction, arguing the Commonwealth failed to establish he used obscene language or made an obscene gesture. We agree and therefore reverse the conviction for disorderly conduct and vacate the judgment of sentence.

At a bench trial, Jacqueline Csop testified that in April 2023, she was working at the Delaware County Bar Association in Media, Pennsylvania, where she was the director of the legal journal and assisted with lawyer referrals, including referrals for walk-in clients. N.T., Jan. 30, 2025, at 5. She

_____

[1] 18 Pa.C.S.A. §§ 3503(b)(1)(i) and 5503(a)(3), respectively.

stated that one day Snead came into the office, and, when asked whether he needed a referral, he said, "No, I want to see Jack." *Id.* at 6. Csop testified she asked if Snead wanted to see District Attorney Jack Stolzheimer, and when he said yes, she informed Snead that it was not the District Attorney's Office. *Id.* She said Snead was "getting louder" and "more agitated." *Id.* Csop testified she asked him to leave. *Id.* She said that a male attorney walking by the office came in and asked Snead to leave. *Id.* Csop stated that the executive director, who had been in the back of the building, came to the lobby. *Id.* at 8. She said that from her desk "you can also see the woman in the office behind" hers, and that, after the executive director arrived, Snead said "I'm not talking to three women," turned his back, and "just stood there with his back to [them]." *Id.* Csop testified they asked him to leave "about five times," but he would not, and the interaction lasted 20 to 25 minutes before they called the police. *Id.*

On cross-examination, Csop stated Snead was not cursing at her or yelling profanities. *Id.* at 10. She said he did not threaten her or make threatening gestures toward her. *Id.* at 10-11.

Patrol Sergeant Eric J. Gavin testified that he was dispatched to the Delaware County Bar Association building to investigate a report of a disorderly person. *Id.* at 14. He stated that when he and Officer Dan DeVito walked into the building, he observed Snead shouting at the woman behind the glass. *Id.* He testified that Officer DeVito intervened with Snead while Sergeant Gavin spoke to Csop. *Id.* Sergeant Gavin testified that after he spoke

- 2 -

with Csop, he ordered Snead to leave the building and Snead "reluctantly walked out slowly." *Id.* at 15. Sergeant Gavin said Snead stayed in a courtyard in front of the Bar Association and "stood at a rigid position of attention facing the . . . building and began shouting expletives at [him and Officer] DeVito at the top of his lungs." *Id.* at 15. He testified he ordered Snead to leave the property "no less than five and probably as many as seven" times. *Id.* at 16. Sergeant Gavin said Snead was saying, "'Fuck you. Fuck the police. Fuck Media. Fuck Delaware County.' Over and over and over." *Id.* at 17.

The trial court found Snead guilty of defiant trespass and disorderly conduct (obscene language or gesture).[2] It sentenced Snead to pay a fine of $100 for each conviction. Snead filed a timely notice of appeal.

Snead raises the following issue:

> 1. Whether the evidence was insufficient to establish [Snead's] guilt for the offense of Disorderly Conduct, 18 Pa.C.S. § 5503(a)(3), where the Commonwealth failed to prove beyond a reasonable doubt that [Snead] used obscene language or made any obscene gesture?

Snead's Br. at 3.

The sufficiency of the evidence is a question of law. Therefore, "[o]ur standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Mikitiuk**, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, we "must determine

---

[2] At the start of the trial, the Commonwealth amended the bills of information to change the grading of both charges from misdemeanors to summary offenses and change the section charged for the disorderly conduct to Section 5503(a)(3). N.T., Jan. 30, 2025, at 3.

whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." ***Id.*** (citation omitted). "A successful sufficiency-of-the-evidence claim requires discharge." ***Mikitiuk***, 213 A.3d at 300.

The Crimes Code defines the offense of disorderly conduct, in relevant part, as follows:

> § 5503. Disorderly conduct
>
> **(a) Offense defined.--**A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> . . .
>
> (3) uses obscene language, or makes an obscene gesture[.]

18 Pa.C.S.A. § 5503(a)(3).

To determine whether language is "obscene" for purposes of Section 5503(a)(3), we apply the three-part test set forth in ***Miller v. California***, 413 U.S. 15 (1973). ***Commonwealth v. Kelly***, 758 A.2d 1284, 1286 (Pa.Super. 2000). We must determine

> (1) whether the average person, applying contemporary community standards would find that the work [(or

statement)], taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* (citation omitted and internal quotation marks omitted); *see also* *Commonwealth v. Bryner*, 652 A.2d 909, 911-12 (Pa.Super. 1995) (adopting the *Miller* test to determine whether words and gestures are obscene under Section 5503(a)(3)); *Miller*, 413 U.S. at 24.

A "prurient interest" means, for purposes of the *Miller* test, "a tendency to excite lustful thoughts" including "a shameful or morbid interest in nudity, sex, or excretion." *Commonwealth v. Johnson*, 327 A.3d 265, 269 (Pa.Super. 2024) (quoting *Roth v. United States*, 354 U.S. 476, 487 n.20, (1957)), *appeal granted*, 345 A.3d 221 (Pa. 2025). "Vulgar language, however distasteful or offensive to one's sensibilities, does not become a crime because people standing nearby stop, look, and listen." *Id.*

In *Commonwealth v. Kelly*, this Court addressed whether the evidence established a conviction under Section 5503(a)(3) where a defendant told a street department worker, "Fuck you, asshole," and gave the worker the "finger." 758 A.2d at 1285, 1288. The Court concluded the evidence did not support the conviction. *Id.* at 1288. It found that although the words were "obscene according to common parlance," the relevant test was whether the words met the *Miller* test for obscenity. *Id.* The Court stated that the inquiry was "whether 'the average person, applying contemporary community standards,' would find that the utterance and the gesture, in the

context of the circumstances of the case, appeal to the prurient interest and describe, in a patently offensive way, sexual conduct specifically defined by the applicable state laws." ***Id.*** It noted that this Court had previously stated that:

> One need not cuss like the proverbial sailor to know that in today's America the "F-word" is used much too freely, but very creatively. Anyone attending an R-rated movie has heard the word used to describe the good, the bad and the ugly . . . .

***Id.*** (quoting ***Commonwealth v. Fenton***, 750 A.2d 863, 866-67 (Pa.Super. 2000)).

The Court in ***Kelly*** concluded that the "'F-word' and use of the middle finger were angry words and an angry gesture having nothing to do with sex," and that the "words and gesture were meant to express disrespect to, and to offend, the Borough employee." ***Id.*** It found the evidence insufficient to support the conviction under Section 5503(a)(3), reasoning, "[t]he record fails to support a conclusion that the words and gesture, as used in the circumstances of [the a]ppellant's case, appeal to the prurient interest or . . . depict[], in a patently offensive way, . . . relevant sexual conduct." ***Id.***

Similarly, in ***Commonwealth v. McCoy***, this Court found the evidence was insufficient to support a disorderly conduct conviction. 69 A.3d 658, 665 (Pa.Super. 2013). There, the defendant shouted, "Fuck the police," multiple times during a funeral procession for a police officer. The defendant had walked down the street, shouting, pumping her first, and laughing. ***Id.*** at 661. The Court concluded that there was "no evidence that the chant was intended

- 6 -

to appeal to anyone's prurient interest nor did it describe, in a patently offensive way sexual conduct." *Id.* at 666. The Court therefore set aside the disorderly conduct conviction. *Id.*

Similarly, in *Commonwealth v. Pennix*, 176 A.3d 340, 341-42 (Pa.Super. 2017), this Court concluded sufficient evidence did not support the disorderly conduct conviction where the defendant "scream[ed] 'Fuck you I ain't got time for this,' 'Fuck you police' and 'I don't got time for you fucking police.'" The Court reasoned the words "were angry words . . . having nothing to do with sex." *Id.* at 346. (citation omitted). It further stated that, as in *Kelly*, although "the words and conduct used by [the a]ppellant were disrespectful, insulting and offensive, they were, in the circumstances of this case, not 'obscene' within the meaning of Section 5503(a)(3)." *Id.* (quoting *Kelly*, 758 A.2d at 1288).

In contrast, this Court has upheld convictions under Section 5503(a)(3) where the defendant's remarks had a sexual component. For example, in *Johnson*, 327 A.3d at 267, the Court found sufficient evidence supported the conviction where during a traffic stop, the defendant "advised [the officer] that he would be seeing [her] daughter" but the officer should "not . . . worry because he's a lover, not a fighter." The Court found that the defendant's words were not "mere 'angry words.'" *Id.* at 271. Rather, the "comments that he is a 'lover, not a fighter' and wanted to have sex with and impregnate the officer's daughter," satisfied the *Miller* test and were sufficient to sustain a conviction under Section 5503(a)(3). *Id.*

Here, the trial court concluded Snead's statements of "Fuck you. Fuck the police. Fuck Media. Fuck Delaware County" were obscene for purposes of the statute. It reasoned:

> The Oxford Language dictionary defines "fuck" as "have sex with". Other similar meanings include but are not limited to: make love; mate; copulate; fornicate; couple; make whoopee; have one's way with; swive; tumble; bed; bonk; boff; get it on; screw; bang; lay; shaft; frig; hump; poke; shtup; dip one's wick; ride; shag; knob; grind; pork; diddle; nail; sleep with; jump; tub; ball. The trial court as finder of fact in this case determined Snead's use of the expletives in this situation was on its face, and in fact, obscene, and concluded in fact the Commonwealth satisfied the three-prong test used to determine whether the language used was obscene. Snead was yelling "Fuck you. Fuck the police. Fuck Media. Fuck Delaware County" at the top of his lungs and creating a public inconvenience and disturbance so great people in the Delaware County Bar Association Building and the building across the street came to the windows of their building to look out and watch Snead. The record actually does not reveal whether these overtures, determined by the trial court to be impressive and determined pleas for sex, were reciprocated by the parties invited by Snead. Snead while engaged in this ongoing display was in a public place, on the sidewalk outside of and adjacent to the Delaware County Bar Association, and the trial court determined the intentional behavior of Snead actually caused public inconvenience, annoyance, and alarm.

Trial Ct. Op., filed May 30, 2025, at 4-5 (word "Appellant" omitted throughout).

We disagree. This case is akin to **Kelly**, **McCoy**, and **Pennix**, where the evidence established the word "Fuck" was an "angry word[]." **See, e.g., Kelly**, 758 A.2d at 1288. Here, applying contemporary standards, there is no evidence to support a finding Snead's words were "intended to appeal to

- 8 -

anyone's prurient interest" and the words did not "describe, in a patently offensive way sexual conduct." Accordingly, we conclude the evidence was insufficient to support the disorderly conduct-obscene language conviction.

The Commonwealth argues that, if we find the evidence was insufficient to establish the conviction, this Court should reconsider its decision in **Bryner**, 652 A.2d 909. In **Bryner**, this Court adopted the **Miller** test to determine whether language and gestures were obscene under Section 5503(a)(3). **Bryner**, 652 A.2d at 911-12. As a three-judge panel of this Court, we cannot overrule this Court's prior, precedential decision.[3] **Commonwealth v. Beck**, 78 A.3d 656, 659 (Pa.Super. 2013) (a "panel [of this Court] is not empowered to overrule another panel of the Superior Court.") (citation omitted).

Conviction for disorderly conduct reversed. Judgment of sentence for disorderly conduct vacated.

---

[3] The Pennsylvania Supreme Court has granted a petition of allowance of appeal in **Johnson** to address:

> (1) Does the definition of "obscene" as used in the disorderly conduct statute, 18 Pa.C.S. § 5503(a)(3), require an appeal to the prurient interest?
>
> (2) Was petitioner's language "obscene" within the meaning of Section 5503(a)(3)?

**Commonwealth v. Johnson**, 345 A.3d 221 (Pa. 2025) (Table).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/10/2026</u>